UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: JAMES PETER CROWLEY

KENT COUNTY PROBATE COURT

        Plaintiff,

                               File No. 1:11-CV-1323

v.

                               HON. ROBERT HOLMES BELL

ROLAND BESSETTE,

        Interested Party.

_____/

# A M E N D E D   O P I N I O N

This matter concerns an order to show cause why an attorney should not be held in contempt for failing to appear before the Kent County Probate Court ("Probate Court"). The order was issued by Judge David Murkowski to Roland Bessette, who has removed it to federal court. Now pending is the Probate Court's motion to remand the order (Dkt. No. 26), and Bessette's motion to quash the order (Dkt. No. 9). For the reasons that follow, the Probate Court's motion to remand is granted, and Bessette's motion to quash is rendered moot.

## I.

On February 25, 2010, the Kent County Probate Court appointed Barbara Zingg as conservator of the estate of a veteran, James Crowley, determined to be mentally incompetent. Subsequently the Department of Veteran Affairs ("VA") and Zingg entered into a fiduciary relationship allowing Zingg to manage Crowley's VA benefits. As part of

this relationship, the VA began to interact with both Zingg and the Probate Court. For example, a letter dated February 3, 2011, was sent by the VA to both Zingg and the Probate Court regarding a VA bond requirement. (Dkt. No. 11, Ex. 3.)

On August 11, 2011, Bessette, the VA's regional counsel, filed an appearance as an interested party in the probate court on behalf of the Secretary of the VA, along with a letter objecting to Zingg's annual account of the estate. (Dkt. No. 32, Ex. K.) On September 2, 2011, the Probate Court issued a "Notice to Appear" requiring Bessette and Zingg's attorney to appear at a scheduling conference on September 26, 2011. Bessette failed to appear. Consequently, Judge Murkowski issued a motion and order for Bessette to appear and show cause why he should not be held in contempt of court for failing to comply with the order to appear at the scheduling conference. (Dkt. 1, Ex. 1.) On December 16, 2011, Bessette removed the contempt proceedings to federal court.

## II.

"A civil action or criminal prosecution that is commenced in a State court" may be removed to the appropriate federal district court if it is against:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. §1442(a)(1). In addition to the plain language, the Supreme Court has read-in an additional requirement, that "federal officer removal must be predicated on the allegation of a colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129 (1989). *See also*

2

*Jefferson County v. Acker*, 527 U.S. 423, 423-24 (1999) (requiring officers to raise "both" a colorable federal defense and establish that the suit is for an act under color of office).

As the Sixth Circuit has explained, this Supreme Court jurisprudence means that a three-pronged test must be met for an officer to remove a civil action or criminal prosecution under §1442(a):

> 1) the defendant is a federal officer within the meaning of the statute; 2) there is a causal connection between what the officer has done under asserted federal authority and the state lawsuit; and 3) the officer presents a colorable defense arising from his duty to enforce federal law.

*EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 345 (6th Cir. 2008) (citing *Mesa*, 489 U.S. at 132-33).  *See also City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 388-89 (6th Cir. 2007) (quoting *Acker*, 527 U.S. at 431).

### III.

The Probate Court challenges the applicability of §1442 to the present matter on two grounds: (1) the order to show cause does not constitute a "civil action" within the meaning of §1442, and (2) Bessette has failed to raise a colorable federal defense to the order to show cause.  While the second issue is dispositive in the present matter, the first issue will be briefly discussed.

### A.

The Probate Court first contends that §1442 does not permit the removal of the present order to show cause to federal court because this order is not a separate "civil action" within the meaning of the statute.  The Probate Court attempts to distinguish between situations

3

where a state court is seeking to summon a non-consenting government official into court (such as with a third party subpoena) and the present situation where the official has voluntarily filed an appearance in the state court. It argues that in the former situation, a new civil action is commenced by the attempt to bring in the non-consenting party, while in the latter situation the contempt petition is part of the original civil action to which the attorney has already consented.

In support of this distinction, the Probate Court relies on *Maryland v. Soper*, 270 U.S. 36 (1926), and *In re Heisig*, 178 F. Supp. 270 (N.D. Ill. 1959), as examples where state court proceedings based on voluntary actions of officials were deemed not removable. However, the Probate Court misconstrues these cases. *Soper* held that a state court indictment against federal agents for voluntary testimony that resulted in perjury was not removable because their voluntary testimony was "not in performance of their duty as officers of the United States." 270 U.S. at 43. *Heisig* similarly depended on the question of whether the actions of the officers fit within their federal duty. 178 F. Supp. at 274-75.

However, the Probate Court is correct, as far as the Court can tell, that no federal court has held that a contempt proceeding regarding an attorney who voluntarily appeared before a state court is removable. Every case cited by Bessette in support of that notion involved involuntary or compelled attendance through subpoenas. *See Brown & Williamson Tobacco Corp. v. Williams,* 62 F.3d 408 (D.C. Cir. 1995); *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989); *Florida v. Cohen*, 887 F.2d 1451 (11th Cir. 1989).

4

But even if the case law interpreting §1442 does not provide a satisfactory answer to the dispute, Bessette contends that the addition of §1442© on November 9, 2011, resolves the issue. Section 1442© states that a "civil action or criminal prosecution" includes "any proceeding . . . to the extent that in such a proceeding a judicial order . . . is sought or issued." It continues as follows: "[i]f removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court." §1442©. It is plain that a state court contempt proceeding, regardless of its origin, fits within this broad language.

But while the language does not appear to distinguish between judicial orders seeking to bring in non-consenting government officials and those regarding officials who have voluntarily filed an appearance, the Probate Court relies on legislative history to draw this line. In particular, it quotes the House Report which stated that the purpose of the amendments is "to ensure that any individual *drawn into* a State legal proceeding based on that individual's status as a Federal officer has the right to remove . . . ." H.R. Rep. No. 112-17 (2011) (emphasis added). The Report further provided that "[t]he bill responds to recent Federal court cases that reflect an inter- and intra- circuit split as to whether State 'pre-suit discovery' laws qualify as civil actions or criminal prosecutions that are removable under §1442." *Id.* Lastly, the Probate Court points out the Report's "The Problem Illustrated" section, which described an instance where pre-suit discovery was sought from a federal officer previously uninvolved with the case. *Id.*

5

While the Court is unwilling to read-in language that plainly does not appear on the face of a statute, it also recognizes as a practical matter that this legislative history and the lack of any cases in pre-amendment years discussing removal in a non-subpoena context create at least a modicum of uncertainty as to how §1442© should be interpreted. Given the recency of the amendment creating this subsection, the question of proper interpretation is made more difficult by the paucity of post-amendment case law to look to for aid.

Therefore, because the resolution of the present matter does not turn on the proper interpretation of §1442© – the second issue raised by the Probate Court is sufficient to warrant remand – the Court makes no determination as to whether a contempt proceeding involving an attorney who voluntarily appeared before a state court may constitute a civil action on its own for the purpose of removal under §1442©.

**B.**

Alternatively, the Probate Court contends that Bessette has failed to raise a colorable federal defense to the order to show cause as required by *Mesa*. 489 U.S. 121. According to the Sixth Circuit, "a federal defense need only be plausible." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010) (citing *Lay v. Burkely Stabilization Corp.*, 312 F. App'x 752, 759 (6th Cir. 2009), and *Upper Cumberland Elec. Membership Corp.*, 484 F.3d at 391). This means that a federal district court is "not required to determine its validity at the time of removal." *Bennett*, 607 F.3d at 1089 (citing *Upper Cumberland Elec. Membership Corp.*, 484 F.3d at 391). However, plausibility is a higher hurdle than mere assertion. *See Bell*

6

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that plausible is more than conceivable).

Bessette raises two potential federal defenses to the order to show cause: sovereign immunity and qualified immunity. While the Court is not allowed to determine the validity of these defenses at this stage, the colorable federal defense requirement does demand that the Court make a threshold determination of plausibility. And it is plain that neither defense is plausible.

The Supreme Court has addressed the issue of when sovereign immunity is implicated by a suit against an individual:

> The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947), or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' *Larson v. Domestic & Foreign Corp.*, *supra*, 337 U.S. at 704, 69 S.Ct. at 1468, 93 L.Ed. 1628; *Ex parte New York*, 256 U.S. 490, 502, 41 S.Ct. 588, 591, 65 L.Ed. 1057 (1921).

*Dugan v. Rank*, 372 U.S. 609, 620 (1963). The contempt proceeding against Bessette plainly does not fit within this rule. Holding Bessette in contempt would not compel the United States to act nor restrict it from acting. This is plainly not a situation where a suit is brought "nominally" against a federal official but seeks a decree that would in actuality operate against the federal agency. *See Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). Any contempt

finding would operate solely against Bessette in his individual capacity.[1]

Bessette provides no support whatsoever that sovereign immunity should protect him. Every case he cites regarding sovereign immunity concerns efforts to compel a government agency to take particular action. *See, e.g.*, *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993); *Coleman v. Espy*, 986 F.2d 1184, 1189 (8th Cir. 1993); *Helfgott v. United States*, 891 F. Supp. 327 (S.D. Miss. 1994). That is obviously not the case here. The Probate Court is not attempting to order the VA to do anything. Indeed, it would stretch the bounds of imagination to consider an order to show cause – an order which was issued against an attorney who voluntarily filed an appearance in state court and then failed to comply with a court order to appear at a scheduling conference – a suit against the United States, simply because that attorney happened to be a federal employee.

The Supreme Court has taken care to stress the importance of the federal contempt power and the consequences of allowing a party to choose which judicial orders to follow:

> The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches. 'If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the judicial power of the United States would be a mere mockery.' " *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911)

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987). This reasoning

---

[1] The Probate Court concedes that federal immunity may preclude the imposition of compensatory damages against Bessette. (Dkt. No. 27, at 9.) As a result, it argues that it is not seeking to order money damages. (Dkt. No. 31, at 7.)

applies equally to the state contempt power. Allowing a special exception for federal attorneys in state court would make light of the Supreme Court's clear regard for judicial authority and dignity.

In conclusion, it is not a plausible federal defense to argue that sovereign immunity may be used by a federal attorney to justify picking and choosing which court orders to comply with.

The only other federal defense Bessette asserts is qualified immunity. However, qualified immunity only applies to civil actions for damages. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Common sense dictates that qualified immunity was never meant to apply in a civil contempt proceeding. The purpose of qualified immunity is to "balance competing values: not only the importance of a damages remedy to protect the rights of citizens, but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.' " *Harlow*, 457 U.S. at 807 (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)). That purpose is not served by applying qualified immunity in a civil contempt proceeding which has nothing whatsoever to do with a discretionary decision of a public official entrenching on a private right.

9

Indeed, the purpose of civil contempt in Michigan is to "compel obedience to an order of the court." *State Bar v. Cramer*, 249 N.W.2d 1, 5 (Mich. 2003).  It is a "coercive remedy," which allows a judge to enforce compliance with her orders.  *Butler v. Butler*, 265 N.W.2d 17, 19 (Mich. 1978).  Allowing qualified immunity in such a proceeding would not serve federal discretion.  Instead, it would corrupt the judicial process, allowing government attorneys who have voluntarily appeared before a state court to ignore the court's orders without consequence.  "Without judicious use of contempt power, courts will have little authority over indifferent attorneys who disrupt the judicial process through failure to appear." *People v. Henry*, 181 N.W.2d 64, 71 (1970) (quoting *Arthur v. Superior Court of Los Angeles County*, 398 P.2d 777, 782 (1965)).

A government attorney who voluntarily subjects himself to a state court's authority by filing an appearance on behalf of a government agency faces the same obligations to the court as any other attorney who files an appearance.  To argue that qualified immunity affords these government attorneys special treatment by virtue of their employer – notably the ability to ignore an order to appear for a scheduling conference – is not plausible.

**IV**.

In *Mesa*, the Supreme Court held that a federal officer needed to raise a colorable federal defense before he could avail himself of removal pursuant to §1442(a).  Bessette has failed to raise a colorable federal defense.  Consequently, §1442(a) may not be used to remove the contempt proceeding to federal district court.

10

Because this Court lacks subject matter jurisdiction as a result, the Probate Court's motion to remand will be granted, and Bessette's motion to quash the order to show cause is rendered moot.  An order corresponding with this opinion will be entered.


Dated: September 13, 2012                    /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE